**BOARD OF INSURANCE COM'RS et al. v. HIGHWAY INSURANCE UNDERWRITERS et al.**

No. 9290.

Court of Civil Appeals of Texas. Austin.

Feb. 24, 1943.

Rehearing Denied March 17, 1943.

Gerald C. Mann, Atty. Gen., Geo. W. Barcus, Asst. Atty. Gen., Lloyd Armstrong, Asst. Atty. Gen., Wm. J. R. King, Asst. Atty. Gen., and Ocie Speer, Asst. Atty. Gen., for appellants.

Ewell H. Muse, Jr., of Austin, for appellees.

McCLENDON, Chief Justice.

Suit brought under authority of Art. 7057b, Vernon's Ann.Civ.St., by Highway (Highway Insurance Underwriters) and Federal (Federal Underwriters Exchange), reciprocal insurance exchanges, against the State Board of Insurance Commissioners and its members and the Attorney General and State Treasurer to recover occupation taxes for 1937 on 1936 business, demanded by the Board as due under Art. 7064, R.C.S. as amended by H. B. 8, Chap. 495, 3rd C.S., 44th Leg. (1936), Art. IV, § 5, at p. 2074, Vernon's Ann.Civ.St. art. 7064, and paid under protest. The suit was originally brought by Southern (Southern Underwriters). Appellees and others intervened. August 4, 1938, judgment was rendered as to Southern and others (except appellees), from which there was no appeal. Upon trial to the court judgment in the instant case was rendered in favor of the State for $818.42 against Highway, and for $1,869.81 against Federal, and against the State for $818.42 in favor of Highway and for $50.78 in favor of Federal. Defendants have appealed.

The amount of taxes paid under protest by appellees respectively was 1¼% of their gross premiums. The judgment was based upon ⅝ of 1%; predicated upon holdings that the prior judgment (held to be that of a class suit and binding upon the parties) had adjudicated with respect to reciprocals: (1) that in computing the entire assets under Art. 7064 (references

are to the 1936 amendment) "unearned premium reserves should be deducted"; and (2) that "premiums in course of collection are tax reducing investments." The pertinent portions of Art. 7064 read: " * * * If any such insurance carrier shall have as much as one-fourth [1/4] of its entire assets, as shown by said sworn statement, invested in any or all of the following securities: real estate in this State, bonds of this State or of any county, incorporated city or town of this State, *or other property in this State in which by law such insurance carriers may invest their funds,* then the annual tax of any such insurance carriers shall be one and one-fourth (1 1/4) per cent of its said gross premium receipts; and if any such insurance carrier shall invest as aforesaid as much as one-half [1/2] of its assets, then the annual tax of such insurance carrier shall be five eighths of one per cent [5/8 of 1%] of its gross premium receipts, as above defined." (Emphasis supplied.)

The appeal is predicated upon four points which may be substantially stated as follows:

1. The protests made at the time of the payment were insufficient to support the judgment.

2. The prior judgment was not binding in this suit.

3. The evidence was insufficient to support the tax rate applied by the court.

4. The statute in force at the time involved did not authorize the rate applied by the court.

Point 1 is well taken. The respective protests made at the time of payment and attached to the petitions of intervention were clearly insufficient to meet the provisions of Art. 7057b, which require "a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized" (Sec. 1.) and provide: "The issues to be determined in such suit shall be only those arising out of the grounds or reasons set forth in such written protest as originally filed" (Sec. 2). Appellees contend in their brief that they were entitled to the benefits of the protest made by Southern (which was manifestly sufficient), on the ground that they and other reciprocals were acting in conjunction with Southern and its protest inured to their benefit. The record does not affirmatively support this conclusion, but since the point

does not seem to have been fully developed below, and since we are reversing the judgment on point 3, it is not necessary to go at length into this subject.

With reference to point 2 the record shows: The judgment adjudicated the rights of Southern and two intervenors on the one hand, and defendants (appellants) on the other. The suit was tried in vacation by agreement, and the judgment recited that the parties "announced ready for trial, and the court having heard the pleadings, evidence and presentation of counsel, is of opinion that the following judgment should be and it is hereby ordered." After awarding the several amounts to the respective parties it decrees that: "this judgment shall be without prejudice to all other intervenors not named in this judgment, but shall be conclusive and final as to the original plaintiff and intervenors herein named, and as between them and all defendants." No party to the judgment took exception to it or gave notice of appeal. There are no recitals in the judgment from which it can be determined what issues were adjudicated. Nor can such issues be supplied by the pleadings since the amounts alleged and those adjudicated do not correspond. However, on August 6, 1938 (two days after the date of the judgment), Assistant Attorney General Richard Brooks, who signed as counsel the last filed pleading of defendants, wrote a letter to the chairman of the Board, manifestly as a guide to its further action regarding the statute as follows:

"In reference to the case of Southern Underwriters vs. Board of Insurance Commissioners, No. 58,826, in the 126th District Court of Travis County, you will recall that a judging of this cause insofar as Southern Underwriters, National Indemnity Underwriters of America, and Casualty Underwriters are concerned.

"The questions involved in this case were the constitutionality of Articles 7064 and 7064a, Texas Revised Civil Statutes [Vernon's Ann.Civ.St. arts. 7064, 7064a], whether or not the term 'entire assets' as used in Article 7064 contemplates the deduction of premium security deposits (deposits made to secure the payment of premiums in advance of a payroll audit) and reserve for unearned premiums, and whether or not insofar as reciprocal or inter-insurance exchanges are concerned, premiums in course of collection, including premium notes, are tax reducing investments.

"Plaintiff and the named intervenors admit the constitutionality of Article 7064 and 7064a and admit that their Workmen's Compensation business was properly taxed at the rate of one-half of one per cent.

"In respect to the taxes collected·in 1937 on the 1936 business of these reciprocal exchanges, deduction of premium security deposits and unearned premiums in computing entire assets has been permitted. This was done with the express understanding that this Department was and is definitely of the opinion that as a general proposition such deduction is not allowable.

"Deduction was allowed in this instance in part in order to avoid litigation as to the constitutionality of these statutes but primarily upon equitable grounds. It is the understanding of this writer that at the time the statements were made upon which this tax was levied, there was in effect a ruling of the Board of Insurance Commissioners or of the Chairman of said Board to the effect that such deduction would be allowed and that the companies affected by this judgment acted upon such ruling in making their investments at that time. This concession is not intended to extend beyond the first year's operation under these statutes since the reversal of the position of the Insurance Department occurred in time for the affected companies to protect themselves thereafter.

"In arriving at the judgment herein concerned, it was conceded by this Department that reciprocal exchanges may count premiums in course of collection, including premium notes, in computing and tax reducing investments.

"This conclusion arises from the fact that tax reducing investments are defined by Article 7064 as 'real estate in this state, bonds of this state or of any county, incorporated city or town of this state, *or other property in this state* in which by law insurance carriers may invest their funds.' There is no statute defining in what property reciprocal exchanges may invest their funds. As a general proposition premiums in course of collection are valuable credits and therefore constitute property in the broadest sense of that term.

"In a broad sense investments includes credits or property other than cash; therefore in the present·state of the laws, it is believed that premiums in course of collection are to be regarded as tax reducing investments insofar as reciprocal exchanges

are concerned. This conclusion is not intended to apply to any other form of insurance organization."

Appellants' contention that the prior judgment was not binding in the instant proceeding is predicated upon three grounds:

1. The judgment expressly recited that it was without prejudice to appellees.

2. The judgment shows to have been by agreement, and therefore could not have the effect of a class suit judgment.

3. The trial court's finding as to what issues were adjudicated by the judgment has no support in the record.

We will consider these grounds together.

The original petition of intervention of appellees alleged:

"That if all or any part of such taxes paid, whether by the Southern Underwriters or by these intervenors, was illegally exacted or collected, then it was illegally exacted and collected from each and all of these intervenors and the Southern Underwriters alike; that this suit ought to be for the relief and benefit of each and all of these intervenors as well as the relief and benefit of the Southern Underwriters, inasmuch as these intervenors comprise a class with the said Southern Underwriters."

"That therefore these intervenors adopt all and several the allegations contained in the Plaintiff's Original Petition on file herein, but would expressly reserve the right to plead further and more specifically in their own behalf by amendment within the time prescribed by law."

The protest of Southern urged invalidity of Art. 7064 upon several constitutional grounds; asserted that Art. 7064 was not applicable to it; and contended that in computing entire assets, and tax reducing investments under Art. 7064, unearned premium reserves should be deducted from the former and premiums in course of collection should be added to the latter.

The pleadings of Southern, the recitals in the judgment (as to its finality; and absence of exception and notice of appeal), and the Brooks letter, taken together, clearly show that the judgment was a consent one, but with court approval, and was predicated upon the above deductions from entire assets and additions to Texas investments. This consent as regards deductions from assets was based upon a previous ruling of the Board, and consequent inequity of not applying that ruling to the 1937 taxes. As to the additions to Texas investments it was based upon the conclusion of the Attorney General's Department as to the correct interpretation of Art. 7064. It should be stated that only the additions to Texas investments were required to bring the Highway tax within the ⅝ of 1% bracket.

We think it clear from the foregoing that as regards the 1937 taxes it was intended by the parties and the court that the judgment should constitute an adjudication of the questions of law raised by the pleadings; and that the recital of "without prejudice" as to other intervenors had relation to factual issues peculiarly applicable to such intervenors. To give the judgment any other interpretation would have the effect of imputing to the Attorney General's Department a purpose of applying one legal interpretation to some organizations and a contrary interpretation of the same statute to others of the same class—a making of fish of one and fowl of another. The trial judge who sat in both trials found as a fact that his former judgment was predicated upon holdings that unearned premiums should be deducted from entire assets and that premiums in course of collection were tax reducing investments insofar as reciprocals and inter-insurance exchanges were concerned, and that this suit, as to Highway and Federal, "is a class action within the meaning of Art. 7057b."

■ Under all these circumstances we think the prior judgment should be given the effect of a class action judgment and held conclusive upon the above law questions adjudicated therein.

■ We sustain the third point. The only evidence in the record bearing on the rate and amount of the tax consisted of the reports filed by appellees with the Board. These reports showed that the tax in each instance was properly figured at the 1¼% rate, under which the judgment should have been for the State for the full amount of the tax paid under protest. The court's findings in this regard were in accord with the allegations of the amended pleadings of appellees. As to the Highway the court further found that the figures set forth in its amended petition of intervention were correct. There is no similar finding as to the Federal. The record contains no evidence in support of these findings.

In reply to this point appellees contend that the last above finding (relating only to the Highway) "is in accord with stipulation agreed to by counsel and considered by the court." In substantiation of this assertion, appellees rely upon a letter attached to their brief, addressed by Assistant Attorney General Lloyd Armstrong to appellees' attorney, Ewell H. Muse, Jr., in reply to a letter by the latter to the former; both letters having been written after appellants had filed their briefs in which their point 3 is urged. Contents of the Muse letter are not shown further than by inference from statements in the Armstrong letter. That letter states that at a hearing upon the general demurrer (at which Federal was not represented) some time prior to the trial, the following took place:

"During the course of your argument, you asked us, as you had done during a previous conference, if we would agree that the figures set out in your amended petition in intervention were correct. We stated that if such figures were those appearing in the annual report of the Highway Insurance Underwriters for the year in question we would agree and would stipulate that they were the figures appearing in the annual report, thus avoiding the necessity of introducing the report to prove such figures, but that we reserved the right to make such objections to the introduction of the figures as we desired. The stipulation was not at that time dictated into the record. Upon the completion of our several arguments, Judge Archer announced that he would make no ruling on our general demurrer but would withhold his ruling thereon pending a trial upon the merits which was thereafter had on November 22, 1941. I was not present on such date, but the record does not reflect that the stipulation which we had agreed would be made was ever actually made. Certainly, had such been read into the record Mr. King would have urged the objections thereto which he deemed applicable. Mr. King and I had discussed the objections which we thought should be urged at the time such stipulation was offered for the record.

"In view of my understanding of the case as above expressed, I see no way to change or supplement the statement of facts now on file in the Court of Civil Appeals.

"We regret that this misunderstanding has arisen but feel impelled to urge our position expressed in our brief already filed that plaintiffs failed to make out a case which will support the judgment."

The stipulation thus conceded was conditional, and there is no showing that the condition was complied with. With reference to the Federal there is no showing whatever of any stipulation.

As to their fourth point, appellants assert: "As the law (Article 7064, R.C.S.) stood at the time involved in this suit there was no statute authorizing the rates mentioned in the court's finding." H.B.8, containing the amendment to Art. 7064 with the above quoted provision prescribing these rates, became effective October 31, 1936 (See Laws 44th Leg., 3rd C.S. at p. 2084), and was therefore in effect at the time here involved. This point is without merit, and is overruled.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.